*Robert N. Berg,* amicus curiae.

### 39175. VEAL v. THE STATE.

WELTNER, Justice.

James Veal, Jr. shot and killed James Nesbitt with a sawed-off shotgun. He was convicted of murder and sentenced to life imprisonment. Veal appeals from the denial of his motion for new trial.

On the night of February 18, 1982, Veal, Nesbitt and three other men were gambling with cards at the trailer home of Mamie Lou Prosser, with whom Veal was living at the time. The men were seated around the kitchen table; Veal sat on the arm of a chair, with Nesbitt seated a few inches away at the table. During the card game, Nesbitt became angry and accused Veal of cheating. Nesbitt then left the trailer in a car with Ernest Hood, who was not a participant in the game. Hood testified that Nesbitt told him he was going to "throw hell" when he got back to the trailer.

Thirty or forty-five minutes later, Nesbitt returned to the trailer and continued playing cards. Nesbitt was standing next to Veal, who was still seated on the arm of the chair. After a short time Nesbitt again accused Veal of cheating, and the two men began to argue. According to one witness, Nesbitt, with one hand in his back pocket, began punching Veal, saying "You owe me up." According to Veal's own testimony, Nesbitt ". . . kept on bumping on me, and he said that he didn't care nothing about me, and I told him I didn't care nothing about him either. And so he was bumping up against me, I thought he had a gun or something in his pocket so I went around him — I pushed him back and I went around him, I went in the room and loaded my gun, I threw it on him and held it about three seconds or more before I shot him, and I never did come back in the room. I stood in the doorway of my room and shot him." The room where Veal kept his shotgun was the bedroom of the trailer. Veal stated that he fired from the hip at a distance of ten to twelve feet, and that Nesbitt was ". . . standing up with his [right] hand in his back pocket and pointing his [left] hand at me."

Subsequently, a knife was recovered from the victim's clothing. There was evidence that, at the time of the shooting, Nesbitt was wearing a jacket, but no jacket was ever found by the police. It is undisputed that, on the night in question, Nesbitt did not display a weapon of any kind. Finally, Veal testified that, on a previous

occasion, Nesbitt had drawn a gun on him after Veal asked Nesbitt not to tell his wife what he was doing at a certain cafe.

1. Veal contends that the trial court erred in declining to instruct the jury concerning voluntary manslaughter. Although there was evidence of heated words and some physical contact between Nesbitt and Veal, Veal's own testimony reveals that Veal broke off the exchange, walked into his bedroom, loaded his gun, stepped back to the door of the room and shot Nesbitt at a distance of at least ten feet. Veal admitted, and other witnesses agreed, that Nesbitt did not produce a weapon.

The issue is whether there was any evidence that Veal acted "... solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . ." Code Ann. § 26-1102. "While words and threats alone are generally not sufficient provocation, the issue of whether a reasonable person acts as the result of an irresistible passion may be raised by words which are connected to provocative conduct by the victim." *Washington v. State,* 249 Ga. 728, 731 (292 SE2d 836) (1982). The evidence in the present case shows only angry words, unconnected to any threat or provocative conduct, other than the physical contact which ended when Veal left the kitchen.

*Washington,* supra, relied on by Veal, is distinguishable. There, a few days before the shooting, the defendant's son had been severely cut on the neck by the victim. On the day of the shooting the son, who was still hospitalized, informed the defendant that the victim was out on bond and had made threats against him. Subsequently, in the presence of the defendant, the victim continually made taunts and threats against the life of the defendant's son, asserting that he would kill or harm him if the charges arising out of the prior cutting incident were not dropped. In the course of this confrontation the victim entered a house and the defendant, allegedly believing he had gone to get a gun, shot him when he came out.

In the present case, the evidence shows no more than a bare fear of injury on the part of Veal, unaccompanied by threats or other sufficiently provocative conduct. While prior opinions of this Court have recognized that fear, as well as anger, may be an element of what is commonly called the "heat of passion," non-threatening words combined with harmless physical contact do not support a charge on voluntary manslaughter, under the facts of this case. The trial court did not err in declining to instruct the jury as to the law of voluntary manslaughter.

2. Veal contends the trial court erred in allowing a GBI agent to testify that the length of the barrel of the sawed-off .16 gauge shotgun used in the killing was less than eighteen inches. Veal argues that this

equates to testimony that the weapon was illegal, and thus the jury was allowed to hear inadmissible evidence of an unrelated crime.

Where death is caused by a shotgun blast, the length of the barrel is relevant to the issue of malice, as barrel length affects the pattern of shot. Nevertheless, we need not decide that question, as the shotgun itself was admitted into evidence and the jurors were able to observe directly its dimensions. Thus it is highly probable that any error in this regard did not contribute to the judgment. *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869) (1976).

3. The evidence was sufficient to enable a rational trier of fact to find guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. We have examined the remaining enumerations of error and find them to be without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED DECEMBER 1, 1982.

*Larry Herrington,* for appellant.

*Joseph H. Briley, District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.